**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | NO. 16-CR-cr-33 |
| v. | (JUDGE CAPUTO) |
| CALEB GUERRIER, | |
| Defendant. | |

**MEMORANDUM**

Before me are nine (9) "Pre Trial Motions" (Doc. 34) filed by Defendant Caleb Guerrier ("Defendant"). For the reasons that follow, I will deny all of Defendant's motions, except for Defendant's "Motion to Suppress Illegally Obtained Statement/Confession," and "Motion to Suppress Evidence Intentionally Seized Pursuant to a Search Warrant Based Upon an Affidavit Which on Its Face Failed to Establish Probable Cause," which will be dismissed. Defendant will be permitted to refile them to properly, and exhaustively, put forward his arguments.

**Factual Background**

On February 9, 2016, a federal grand jury returned an indictment charging Defendant with drug trafficking and firearms offenses, including: Count 1, Distribution of Cocaine Base (Crack), on November 7, 2013, in violation of 21 U.S.C. § 841(a)(1); Count 2, Distribution of Cocaine Base (Crack), on November 13, 2013, in violation of 21 U.S.C. § § 841(a)(1) and 841(b)(1)(C); Count 3, Convicted Felon in Possession of Firearms, on March 20, 2014, in violation of 18 U.S.C. 922 §§ (g)(1) and 924(e), and; Count 4, Possession of a Firearm with an Obliterated Serial Number, on March 20, 2014, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). The indictment also includes a forfeiture allegation.

Because Defendant failed to include a factual background section in his brief, I will rely on the factual averments in the Government's brief in opposition. (Doc. 35, at 2).[1]

---

[1] I must note at the outset the poor quality of Defendant's brief and motions. Not only does the brief fail to include "a procedural history of the case, a statement of facts, [and] a statement of questions involved," as required by Local Rule 7.8, it also fails to include "a

The criminal charges in this matter stem from an investigation conducted by the Luzerne County Drug Task Force and other local law enforcement authorities in Luzerne County.

On November 7, 2013, investigators from the Luzerne County Drug Task Force utilized a confidential informant to make a "controlled purchase" of crack cocaine from Defendant in exchange for the sum of $200. The drug transaction took place at a location in Pittston, Luzerne County. The drug transaction was preceded by a series of telephone calls between the confidential informant and Defendant, which were recorded by investigators pursuant to Pennsylvania law. Prior to the transaction, the confidential informant was searched for money, drugs, or contraband, with negative results. Investigators also provided the confidential informant with $200 in prerecorded U.S. currency. Investigators then established surveillance in the area of the prearranged meeting location and were able to observe Defendant arriving at the location in order to meet with the confidential informant. After the transaction, the confidential informant provided investigators with a quantity of suspected cocaine which he/she indicated had been purchased from Defendant in exchange for $200. Again, investigators searched the confidential informant and his/her vehicle for money, drugs, or contraband with negative results.

On November 13, 2013, members of the Luzerne County Drug Task Force again utilized a confidential informant to make a "controlled purchase" of crack cocaine from

---

certification by counsel for the movant that he or she has sought concurrence in the motion from each party," as required by Local Rule 7.1. The motions also fail to include a "a form of order which, if entered by the court, would grant the relief sought in the motion," as required by the same Local Rule. Moreover, even though "allegations of fact are relied upon in support of [Defendant's] motion[s]," counsel fails to file "all pertinent affidavits, transcripts, and other documents" with the motion, as required by Local Rule 7.3. Further, even though Local Rule 7.8 states that "[a] brief may address only one motion," Defendant's brief addresses nine. Finally, and most importantly, Defendant's brief does not "contain complete citations of all authorities relied upon," as required by Local Rule 7.8. Not only does counsel for Defendant fail to properly cite to sections of the cases he relies on by using pincites, he habitually fails to refer to any legal authority at all. Counsel for Defendant would be well advised to familiarize himself with, and follow, our Local Rules and applicable legal writing standards before filing any other documents in this Court.

Defendant in exchange for $200. The drug transaction was again preceded by a number of telephone calls between the confidential informant and the defendant. The confidential informant was again provided with the sum of $200 in prerecorded U.S. currency in order to purchase crack cocaine from Defendant. Investigators then established surveillance in the area of the prearranged meeting location in Pittston Township, Luzerne County, and were able to observe Defendant at the meeting location. Investigators observed Defendant enter the confidential informant's vehicle, remain inside for a brief period of time, and then exit the confidential informant's vehicle. Defendant then entered a dark-colored Lexus sedan, bearing Pennsylvania registration JBY2550, and left the area. A search of motor vehicle records revealed that the Lexus sedan was registered to Defendant.

After the transaction, investigators met with the confidential informant, who tuned over to investigators a quantity of suspected crack cocaine. The confidential informant was again searched for money, drugs, or contraband with negative results. Investigators subsequently obtained an arrest warrant for Defendant.

On March 20, 2014, members of the Luzerne County Drug Task Force attempted to serve the arrest warrant on Defendant. Investigators proceeded to a residence located at 43 Marcy Court, Hanover Township, Luzerne County. Police officers approached the residence and knocked on the door. Defendant answered the door and allowed the police officers into his residence, where he was taken into custody. Noting the presence of several pit bulls in the residence, as well as observing children's clothing, officers conducted a "protective sweep" of the residence and observed a stainless steel revolver in an open bag on the floor of a bedroom of the residence. The residence was then secured, and Officer Mark Stefanowicz of the Hanover Township Police Department obtained a search warrant for the residence. The search warrant was approved by the Luzerne County District Attorney's Office and was signed by District Magistrate Judge Joseph Halesey.

A subsequent search of the residence at 43 Marcy Court resulted in the seizure of a number of items, including the following:

1) Charter Arms Undercover .38 special handgun with an obliterated serial number;

2) Taurus PT 738 .380 handgun with an obliterated serial number;
3) Glock 19 9mm handgun;
4) Springfield XD-9 9mm handgun;
5) Lorcin L9 9mm handgun with an obliterated serial number;
6) 20 gauge shotgun with no make, model, or serial number;
7) digital scale with residue;
8) packets of heroin stamped with the words "Happy Joker;"
9) body armor vest;
10) various types of ammunition;
11) coffee grinder with white powder residue;
12) various other items of drug paraphernalia;
13) various amounts of U.S. currency;
14) mail in the name of Caleb Guerrier; and
15) mail in the name of Latroya Knight.

A police report notes that the residence was in deplorable condition, with the odor of dog feces, urine, and rotten food throughout the residence.[2] Three pit bull dogs were located within crates in the kitchen area. While the investigation was ongoing, two children came home from school and arrived at the residence. Police officers contacted Pennsylvania's Children and Youth Services and made numerous attempts to contact the mother of the children, Latroya Knight. Members of the Society for the Prevention of Cruelty to Animals were also contacted, who arrived at the scene and took possession of the pit bulls.

Subsequently, Ms. Knight arrived at the residence and, after being given her Miranda warnings, agree to speak with investigators. Ms. Knight stated that she and Defendant had been in a relationship for several years and had two children. Ms. Knight further stated that she and Defendant had lived at the 43 Marcy Court residence for three years. Ms. Knight indicated that Defendants was not employed, and further related that she knew that Defendant was selling drugs - specifically crack cocaine – but that Defendant would not provide her with any details. Ms. Knight stated that Defendant had told her to stay away from certain areas within the residence, such as his toolbox in the kitchen and his bedroom closet. Ms. Knight further stated that she had observed cocaine residue on a table that Defendant would use to package crack cocaine.

In light of the above, on February 9, 2016, a federal grand jury returned an indictment charging Defendant with drug trafficking and firearms offenses.

---

[2] On March 21, 2014, Hanover Township officials posted the residence at 43 Marcy Court as "Unfit for Occupancy."

On August 15, 2016, Defendant, through his counsel, filed nine pre-trial motions. The motions are now ripe for disposition. I will address each in turn.

## I. "Motion that the Prosecution be Required to Reveal Material that Would in its Nature be Exculpatory of Guilt and/or Mitigating of Punishment and that the Duty to Reveal Such Material be Continuing Throughout the Case"

The argument in Defendant's first motion is confined to just three sentences, one of which merely repeats the title of the motion, and is devoid of any factual or legal justifications or efforts to cite to any legal authority.

As Defendant's counsel should be well aware, the Government's substantive legal discovery obligations arise under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. § 3500, and Federal Rule of Criminal Procedure 16. Specifically, as the Supreme Court has held, the Constitution requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Thus, pertinent constitutional principles already mandate that the Government provide Defendant with the kind of evidence he now demands. In fact, Government disclosure of material exculpatory and impeachment evidence is part of the constitutional guarantee to a fair trial, *Brady,* 373 U.S. at 87, and because *Brady* and *Giglio* are constitutional obligations, *Brady/Giglio* evidence must be disclosed regardless of whether Defendant makes a request for exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). There is no evidence, and none asserted in Defendant's motion, that the Government has not been complying with its discovery obligations. To the extent, however, that Defendant's motion asks for disclosures *beyond* those mandated and specifically delineated by Rule 16, the Jencks Act, and constitutional requirements, Defendant's motion will be denied.

## II. "Motion to Require the Government to Reveal any Agreement Between any Agent or Agency of the Government and any Government Witness"

Defendant "believes that the Government and/or the Commonwealth have entered into agreements of leniency as to sentencing or charges with witnesses and/or informants

5

in the instant case, [and, thus, Defendant] is entitled to learn of all such agreements, as they go to the witness' credibility and can be used by the Defendant on cross examination." (Doc. 38, at 2). Defendant again does not cite to any legal authority for this proposition.

As already mentioned, there is no reason to believe that the Government is not aware of its discovery obligations, which include the duty to disclose information that could be used to impeach a government witness. *See Giglio,* 405 U.S. at 154. However, the Government is under no obligation to disclose such information until "the day that the government witnesses are scheduled to testify in court." *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983). Thus, Defendant's motion will be denied.

### III. Motions to "Disclose the Identity of the Government's Informants"; "Require the Government to Produce the Informant for Trial"; and "Disclose the Present Whereabouts of the Government's Informants for Purposes of a Defense Subpoena"

Defendant "believes that the Government's confidential sources (CS) and confidential informant (CI) will testify that . . . Defendant was arrested by mistake." (Doc. 38, at 4). As such, he argues that he is entitled to learn the identity of those informants and their whereabouts.

Defendant again fails to cite to any legal authority, and fails to explain or support his *belief* that the Government's informants "will testify that . . . Defendant was arrested by mistake." (*Id.*). Defendant cannot merely promote his alternate view of reality without providing some evidence for it and some reassurance to the Court that his arguments have support in precedent.

In *Roviaro v. United States*, 353 U.S. 53, 63–65 (1957), the Supreme Court outlined the scope of the informant's privilege, and held that the privilege was a matter of balance, and that "no fixed rule" applied. *Id.* at 62.

> The informer's privilege permits the government to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law, and the privilege only gives way when the informer has some sort of direct connection, either as a participant or an eyewitness, to the crime charged.

*United States v. Bigesby*, 685 F.3d 1060, 1063 (D.C. Cir. 2012) (quotation marks omitted) (citing *Roviaro*, 353 U.S. at 59 and *United States v. Gaston*, 357 F.3d 77, 84 (D.C. Cir. 2004)).

Here, Defendant's motions do not assert that any of the informants were either participants in or eyewitnesses to the charged crimes. In fact, Defendant provides no factual justifications at all. Defendant's "belief," or "mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Roviaro*." *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981) (citations omitted). Moreover, I am not required to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," *Roviaro,* 353 U.S. at 62, until "defendant sets forth a specific need for disclosure." *Jiles*, 658 F.2d at 196. Because Defendant has not done so, his motions will be denied. *See United States v. Kerris*, 748 F.2d 610, 614 (11th Cir.1984) (stating that "mere conjecture about the possible relevance of the informant's testimony is insufficient to compel disclosure" and that "the defendant must present some evidence of the defense and show that the information gained from an interview with the informant would significantly aid the defendant in establishing that defense").

### IV. "Due Process Motion for Investigative Funds to Assist the Indigent Defendant and Defense Counsel in Preparing and Presenting the Defense"

Defendant requests "investigative funds" for the assistance of a "Criminal Investigator" and a "Presentence Investigation Expert." (Doc. 38, at 8). In support of the argument that he is entitled to public funds for the employment of investigators and experts, Defendant cites to *Douglas v. California*, 373 U.S. 353 (1963), and *Ake v. Oklahoma*, 470 U.S. 68 (1985).

In *Ake*, the Supreme Court held that "when a defendant demonstrates ... that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id*. at 83. However, the Supreme Court "has not yet extended *Ake* to

non-psychiatric experts." *Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir.2004); *see also Caldwell v. Mississippi*, 472 U.S. 320, 323 n. 1 (1985) (the Supreme Court declined to extend *Ake*'s holding to the appointment of a criminal investigator, fingerprint expert, and ballistics expert, stating that "we have no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type sought here"). As such, Defendant cites to no clearly established law under which he is constitutionally entitled to a "Criminal Investigator" and a "Presentence Investigation Expert." Thus, his motion will be denied.

### V. Motions to "Suppress Illegally Obtained Statement/Confession" and to "Suppress Evidence Intentionally Seized Pursuant to a Search Warrant Based Upon an Affidavit Which on Its Face Failed to Establish Probable Cause"

Defendant asserts that "he was arrested without probable cause" and "any alleged statements of the Defendant are the product of an illegal detention following an illegal warrantless arrest." (Doc. 38, at 9). He also argues that the "physical evidence in this case was seized by the investigating police officers . . . pursuant to the execution of an arrest warrant" which "fails to establish probable cause." (*Id.* at 14).

In light of the fact that Defendant fails to specify which statements he is seeking to suppress and the insufficiency of Defendant's explanation for why the arrest warrant lacks probable cause, I am unable to properly consider these motions. Fourth Amendment jurisprudence is complicated and voluminous, and Defendant's counsel, by, yet again, not citing to a single case, fails to properly put forward legally supported arguments. The issue of whether suppression of evidence is appropriate, or whether any statements were elicited in violation of applicable constitutional laws is a complex one, and Defendant's conclusory arguments and incomplete analysis of this complex problem is inadequate.

Thus, in order to preserve Defendant's constitutional rights, I will dismiss the motions and permit Defendant to refile them to properly, and exhaustively, put forward his arguments, paying attention to Local Rules, precedent, citation standards, proper legal analysis, and avoidance of conclusory averments.

## VI. "Motion to Compel the Government to Produce Statements of Government Witnesses For Discovery and Inspection Prior to Defense Cross-Examination of Each Such Witness"

Defendant argues that "in the interests of fairness and justice, the Government should be compelled to provide the defense with statements of their witnesses prior to the cross-examination of each such witness." (Doc. 38, at 15). Defendant also asserts that "[a]ny evidence which will be used to impeach the credibility of any defense witnesses must be given to the defense by the prosecution." (*Id*.). To support these arguments, Defendant cites to only one case, a 1950 decision by a district court in the Southern District of New York, which held merely that psychiatric testimony was admissible to impeach the credibility of the Government's key witness. *See United States v. Hiss*, 88 F. Supp. 559, 559 (S.D.N.Y. 1950). Thus, *Hiss* is inapposite. Moreover, any request by Defendant that the Government be directed to disclose witness statements far in advance of the trial is well beyond what is required by the plain language of both Rule 26.2 of the Federal Rules of Criminal Procedure and Title 18 U.S. C. § 3500. Rule 26.2 requires disclosure only "[a]fter a witness . . . has testified on direct examination." Thus, Defendant's motion will be denied.

## Conclusion

For the foregoing reasons, I will deny all of Defendant's motions, except for Defendant's "Motion to Suppress Illegally Obtained Statement/Confession," and "Motion to Suppress Evidence Intentionally Seized Pursuant to a Search Warrant Based Upon an Affidavit Which on Its Face Failed to Establish Probable Cause," which will be dismissed. Defendant will be permitted to refile them to properly, and exhaustively, put forward his arguments.

An appropriate Order follows.

| | |
|---|---|
| February 2, 2017 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |